RICHARD WOOD *et al., v.* HIRAM SHORT.

*Venue—Costs—Construction of Statute.*

The Act of April 15, 1885, (Laws of Delaware, Vol. 17, Chap. 623), providing tha
whenever suit shall be brought in any civil action, except in actions where the
venue is local, against any citizen of this State, in any other county than that
wherein the defendant resides, the plaintiff shall not recover costs, &c., is
constitutional and valid.

COMEGYS, C. J., dissents.

*(February 1, 1888.)*

On reservation from the Superior Court of Kent County, of
a question as to the validity of Chap. 623, Vol. 17, *Laws of
Delaware. Act sustained.*

The action was assumpsit upon a book account brought in
Kent County. Defendant resided and was served in Sussex
County. He made no appearance or defense and on the last day
of the term plaintiff's counsel, under the rules, moved for judg-
ment with full costs, notwithstanding Chapter 623, Vol. 17, *Laws
of Delaware.*

The court reserved the question of law raised by the motion,
for the Court of Errors and Appeals. Heard before all the judges.

*J. Alexander Fulton,* for plaintiffs:

The Act of the General Assembly, passed April 15, 1885,
Chap. 623, § 1, p. 926, Vol. 17, is unconstitutional, because the
constitutional right cannot be diminished, circumscribed, retarded,
impeded, obstructed, burdened, restrained or controlled by legisla-
tive enactment.

See *Weston v. Charleston,* 27 U. S. 2 Pet., 449 (7 L. ed. 481);
*Passenger Cases,* 48 U. S. 7 How., 283 (12 L. ed. 702); *Almy v.
Cal.,* 65 U. S., 4 How., 169 (16 L. ed. 644); *Com. v. Mann,* 5
Watts & S., 403.

Thr Constitution invests the Supreme Court with a jurisdiction

coextensive with the State, and the Legislature has no power to limit this jurisdiction or to prohibit the court from issuing its writs at any time to all parts of the State.

37 Pa., 237.

A general grant in the fundamental law cannot be restricted by legislation.

Story, Const., § 425.

The argument *ab inconvenienti* has no force. The answer to all this is, *Ita lex scripta est.*

*Id.* §§ 425, 426.

No interpretation which impairs the power granted can be entertained.

*Id.* § 428.

In the interpretation of a power all the ordinary and appropriate means to execute it are to be deemed a part of the power itself.

*Id.* § 430.

As to limitation and incidental rights, see

*Id.* pp. 1649, 1650.

*N. B. Smithers* (by request of the court), for defendant.

HOUSTON, J., delivered the opinion of the court orally, four of the five judges deciding in support of the statute.

COMEGYS, C. J., delivered the following dissenting opinion:

It is to be regretted that this question was not more formally and thoroughly argued; its importance, in my view, called for a full discussion of it, in its different bearings.

It arose upon a motion in the Superior Court of Kent County to allow to the plaintiffs there their costs in a suit in that court brought by them against the defendant there and here, he being, at the time of suit brought, a citizen of the County of Sussex. The reason for the motion was an Act passed by the Legislature on the 15th day of April, 1885, which provides as follows:

" Section 1. That whenever hereafter suit shall be brought in

8

any civil action, except in actions where the venue is local, against any citizen of this State, in any other county than that wherein such citizen shall reside at the time of the inception thereof, the plaintiff shall not recover his costs, and said costs shall not be payable by the defendant, nor collectible by execution process."

The Act was resisted by the plaintiff's counsel for alleged want of constitutional authority for the Act in question.

It was supported by the senior member of the bar (who was requested by the court to give them his views upon the question), upon the ground that the recovery of costs in an action was not a *constitutional* but a *legal* right, resting entirely upon the will of the Legislature; that, originally, no costs were recoverable, as such, in an action, and only became so by reason of statutory enactment.

This is perfectly true; and if the only question in this case were one of legislative power, generally, over costs, the plaintiffs would have no case at all. But the real question seems to me to be this: Has the legislature power, in its general control over the subject of costs, to pass a law denying them to a successful plaintiff, where the defendant does not reside in the county in which the suit is brought? While there is no direct design to prevent a plaintiff from suing in whichsoever county he chooses, yet there is an impediment attempted to be thrown in his way of doing so. I use this language without qualification because the fact is well known that the object the Legislature had in view, in passing the Act, was, in effect, to deny to a plaintiff the choice of jurisdiction for bringing his suit.

The decision of the question raised by this case depends in part upon the construction which should be given to the eleventh section of the judiciary article (VI.) of the Constitution, which is in these words—the courts having been created, etc., in prior sections:

" The jurisdiction of each of the aforesaid courts shall be co-extensive with the State. Process may be issued out of each court, in either county, into every county."

There can be no question now raised as to what that section means; constant practice under it, without any pretense to the contrary, has settled it—that a plaintiff may sue in any county: and if defentant resides in another county, process may be sent into it to arrest or summon him, as the case may be; and the trial shall be had where the suit is brought.

The right of the plaintiff then to sue in any county he may choose is a *constitutional* right; and he cannot be deprived of it by legislative Act. The Act in question does not, in its terms, prohibit the exercise of this right, it is true: but does it not, all the same, impose a restriction upon it, by fettering its exercise with a virtual penalty? If so, then how can such an Act be upheld?

No doubt the Legislature has power to regulate to some reasonable extent the exercise of this right, in the interests of supposed justice. It might provide, for example, that in cases of suit in one county against a citizen in another, the process should be served a certain number of days before the appearance term, so as to give such a defendant additional time to prepare for going out of his county to attend court, etc. But can it do anything which touches or interferes with, the essential right? Is not the denial of costs to a plaintiff practically a curtailment of, or condition imposed for, the exercise of the constitutional right of choice of tribunal? Does it not amount to a penalty? If not, then it is difficult to see what would violate the Constitution, short of an Act to close the doors of the courts against one who sued a defendant not residing in the county where the suit was brought.

Once allow that the Legislature can impair the value of the constitutional right by refusing costs to a successful plaintiff, because he summons his debtor to appear before the court sitting in another county and answer to his claim, and there will not be found any limit to legislative power in that respect; if denial of costs should not put an end to the practice of suing a defendant out of his county, other means will be resorted to, of a more stringent nature, to accomplish that end. I know of no greater danger than

that of upholding a statute, the passage of which was intended to impose upon a plaintiff a condition under which his undoubted constitutional right shall be exercised. Admit the legality of the Act in question and let us see what might be done in other cases:

Trial by a jury of twelve men is a legal right, in its origin. It has been recognized by the Constitution, and provision made that it " shall be as heretofore." The Legislature cannot, in view of this provision, touch the right; but no more than it can touch the right to sue in any county. There is, upon our statute book, an Act providing that if the parties consent, a jury case may be tried by the judges. Here is, therefore, another tribunal which, in the contingency mentioned, may try facts as well as law. What would be thought of a statute which should provide that if a defendant should be willing that the case might be tried by the court without a jury, the plaintiff, if he insisted upon trial by jury, should recover no costs with his verdict, if he got one ? Would any lawyer say that such an Act would be valid? What is there about trial by jury that sanctifies it against such an Act as is contemplated above, any more than there is about the said eleventh section of article VI? Such an Act would instantly provoke denunciation, as an attempt to impair the great right of trial by jury; but the reason at the bottom of the objection would be the same precisely as that believed to exist against the law under review. One constitutional right or privilege is the same as another; they are equally inviolate.

The *habeas corpus*, the great writ of liberty, as it is fitly called, is also purely a creature of law, and was provided for to secure the enforcement of another creature of the law—*Magna Charta.*

We have embodied some of the features of that great document in our Constitution. There they are embalmed, as it were, and shielded from any legislative invasion. Our *Habeas Corpus Act*, as that in England, was passed to promote the enforcement of the provision about personal liberty; but the right in the judicial

tribunal to deliver the oppressed from imprisonment, had always existed, although interfered with, and virtually suppressed, by tyrannical power.

Suppose we had no statute upon the subject—nothing but the Constitution. Could the right of a prisoner to apply to the Chancellor or Chief Justice, if they resided out of the county where he was detained, be made by legislative Act to depend for its exercise upon his being mulcted in his own costs in the event of success? Surely not. And why not (the quality of all constitutional rights being the same), if it be lawful to punish a plaintiff in a common action, by denying him costs, if he sue a defendant out of the latter's county? The legislative power over costs would indeed be a fearful one, if it could be used to curtail a constitutional privilege of equal sanction as any of the others.

If the Legislature can regulate the exercise of a constitutional right in one respect so as to lessen its value to the citizen, it may do so in another, and thus destroy the right in the end. The right to regulate involves the right to destroy, as was said by the Supreme Court of the United States in an early case, the authority of which has been constantly followed in support of the proposition.

Every suitor, by the law of the land, older than our Constitution, who recovers in his action, recovers his costs also. They are part of his verdict, and as much a feature of jury trials as the right of challenge. So far as our records show they have always formed part of the plaintiff's recovery; the right to them existed when the Constitution was made in 1792 as one of the characteristics and (using the language of Tidd with respect to them) *incidents* of jury trials. In fact it is just six hundred years since the Statute of Gloucester (6 Edw. I.) was passed, giving costs to the plaintiff— a hundred years almost before the commencement of legal memory.

If the Legislature at this day, and within the constitutional guaranty of perpetuity of jury trials, can deprive a party of costs because he sues a defendant out of his county—take away from him an incident of trial by jury as it existed when the Constitution

was made, and five hundred years before—then it can, in other modes also, interfere with him, and thus use a valid power, given by one clause, to defeat, or so impair as to render worthless, or much less valuable, a privilege given to the citizen by another clause. If this can be done it will be idle to contend hereafter for the sacredness of constitutional guarantees or provisions.

Of the injustice of this law I shall not speak, because it has nothing to do with the question before the court. I have spoken of costs as an *incident* of jury trials, and given Tidd as my authority for the use of the term. An incident, in legal speech, is something that appertains to a principal subject or thing. An *incident* of a life estate is what are called emblements. But they are but legal advantages pertaining to such estate, and may be altogether abolished by statute. Suppose a constitutional provision, that life estate in land should "be as heretofore" (adopting the language used with respect to jury trials), would an Act abolishing emblements, an ancient feature of such estate, older than legal memory, be a valid exercise of legislative power?

To recover costs you must sue a defendant, by this statute, in the county where he resides. He resides where his family lives, if he have one. He may be engaged in work or business in another county, and contract his debt for what are called necessaries of life —board, clothes, medicines, and medical attendance—for example. Nobody with whom he has contracted a debt on such account can sue him, upon his claim, in the latter county where he is employed, although the cause of action arose there, but must go before a court or justice of the peace where his legal residence is, and sue him there, or else lose all the costs he may incur in his effort to collect his debt. Legislative control over the general subject of costs would, in such case also (this statute being considered), operate a substantial denial of justice; for the expense of transporting himself and his witnesses to another county, and keeping them there until the time, would be greater in many cases, to a plaintiff, than the debt sued for.

As further illustration of the point of the objection to legislative interference with the incidents of jury trials, take that of the right of challenge in civil causes. This is a purely legislative right, there being no such language in the Constitution protecting the right as there is with respect to criminal trials, where an "impartial trial" is guarantied a criminal. The object of the challenge allowed by law to suitors in civil actions, is the same as it is in behalf of criminals: that an *impartial trial* shall be had. But in the case of the latter class, the Constitution secures the right to it; whereas, in the case of the former there does not appear to be any provision for that purpose. It cannot, I think, be contended that the right of challenge in civil actions is anything more or greater, legally speaking, than is the incident of costs to the successful party in an action.

Could the Legislature enact that challenges in civil actions shall no longer exist? Why not? Because the right of challenge is an *incident of jury trials*. But it is no more an incident of them than is the right to costs in the event of success in a suit.

I might give other illustrations by way of showing how a Legislature could impair the value of a constitutional right; but I think I have given enough. My opinion is that the Act in question is *ultra vires*, not a valid exercise of legislative powers, and is therefore void.